UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

   UNITED STATES OF AMERICA       :
                                             :
                 - v. -           :     15 Cr. 120 (SAS)
                                             :
   JOSE AVILES,                  :
                                           :
                   Defendant.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## GOVERNMENT'S SENTENCING MEMORANDUM

PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States of America

Megan Gaffney
Assistant United States Attorney
    - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| - v. - | : | 15 Cr. 120 (SAS) |
| | : | |
| JOSE AVILES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in advance of the defendant's sentencing, which is scheduled for October 7, 2015, at 4:30 p.m.  For the reasons set forth below, the Government respectfully submits that a sentence within the Guidelines range of 60 to 71 months is appropriate.

## BACKGROUND

I.     **The Offense Conduct**

The New York City Police Department ("NYPD") conducted an investigation into heroin trafficking occurring at and around a residential building in the Bronx ("Residential Building-1").  (*See* PSR ¶¶ 11-12).  Using investigative techniques including surveillance and undercover narcotics purchases, the NYPD identified a group of individuals who sold heroin bearing the stamp of "Coca Cola"[1] in and around Residential Building-1.  (*See* PSR ¶ 12).  Jose Aviles, along with his co-defendant Carlos Ramos, were the leaders of the group.

Aviles's participation is detailed as follows:

_____

[1] Heroin is sold in packages that function as units of measurement.  (PSR ¶ 13).  A glassine of heroin generally refers to an envelope containing approximately 0.05 grams.  (*Id.*).  The envelope often bears a distinctive mark called a stamp that serves to "brand" the heroin inside.  (*Id.*).

On or about April 7, 2014, an undercover officer with NYPD (identified in documents as "UC-1") met with Jose Aviles inside of Residential Building-1 and purchased 20 glassines of heroin.  (PSR ¶¶ 15, 18).  The glassines bore the stamp "Coca Cola."  (PSR ¶ 18).  During that exchange, Aviles told UC-1 that he and Carlos Ramos shared a cellphone that they used for narcotics trafficking.  (*See* PSR ¶ 20; *see, e.g.*, PSR ¶ 22).

On or about April 16, 2014, UC-1 met with Jose Aviles in Residential Building-1, outside of Aviles's apartment.  (*See* PSR ¶ 35).  UC-1 purchased ten bundles of heroin from Aviles, the glassines in which bore the stamp "Coca Cola."

On or about May 8, 2014, UC-1 traveled to Residential Building-1 to purchase heroin.  (PSR ¶ 22).  Aviles brokered the transaction on May 7 and 8, 2014, and directed Carlos Ramos to complete the deal.  (*Id*.).  UC-1 purchased ten bundles of heroin, the glassines in which bore the stamp "Coca Cola."  (*Id*.).

On or about May 14, 2014, UC-1 purchased from Aviles 15 bundles of heroin, the glassines in which bore the stamp "Coca Cola."  (*See* PSR ¶ 35).  During that transaction, Aviles told UC-1 that Ramos was his partner in his heroin business.

On or about May 22, 2014, UC-1 purchased from Carlos Ramos 15 bundles of heroin, the glassines in which bore the stamp "Coca Cola," in a deal brokered by Aviles.  (*See* PSR ¶ 35).

On or about July 17, 2014, UC-1 purchased from Carlos Ramos 15 bundles of heroin, the glassines in which bore the stamp "Coca Cola," in a deal brokered by Aviles.  (*See* PSR ¶ 35).

On or about August 14, 2014, UC-1 purchased from Jose Aviles 15 bundles of heroin, the glassines in which bore the stamp "Coca Cola."  (*See* PSR ¶ 35).

On or about September 3, 2014, UC-1 purchased from Jose Aviles 15 bundles of heroin, the glassines in which bore the stamp "Coca Cola." (*See* PSR ¶ 35).

On or about October 2, 2014, UC-1 purchased from Carlos Ramos 15 bundles of heroin, the glassines in which bore the stamp "Coca Cola," in a deal brokered by Aviles. (*See* PSR ¶ 35).

On or about November 19, 2014, UC-1 traveled to Residential Buildling-1 and met with Jose Aviles, Carlos Ramos, and their co-defendant Addiel Dinzey. (PSR ¶ 27). UC-1 purchased five bundles of heroin from Aviles and his co-defendants, the glassines in which bore the stamp "Coca Cola." (*Id.*).

On the day of Aviles's arrest, the NYPD executed a search warrant of Aviles's apartment inside of Residential Building-1 and found approximately 140 grams of heroin (approximately 2800 glassines). (*See* PSR ¶ 32).

Aviles and his co-defendants were charged in a one-count indictment. (PSR ¶ 2). Count One charged the defendants with conspiracy to distribute, and possess with intent to distribute, one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(A), and 846. (*Id.*).

## II.     The Defendant's Guilty Plea

On June 1, 2015, Aviles pleaded guilty to a lesser included offense of Count One of the Indictment, pursuant to a plea agreement with the Government. (*See* PSR ¶ 4). The lesser included offense to which he pleaded was conspiracy to distribute, and possess with intent to distribute, mixtures and substances containing 100 grams and more of heroin, in violation of Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(B), and 846. This Court accepted Aviles's plea on June 30, 2015.

**III.      The Defendant's Criminal History**

Under the calculations in the plea agreement, the defendant has four criminal history points, calculated as follows:

1.      On or about January 21, 2015, the defendant was arrested for criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree.[2]  Those charges are still pending.  Pursuant to U.S.S.G. § 4A1.2, this results in no criminal history points.

2.      On or about September 19, 2014, the defendant was arrested for criminal sale of a controlled substance in the third degree.  That charge is still pending.  Pursuant to U.S.S.G. § 4A1.2, this results in no criminal history points.

3.      On or about June 28, 2014, the defendant was arrested for criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree.  Those charges are still pending.  Pursuant to U.S.S.G. § 4A1.2, this results in no criminal history points.

4.      On or about January 2, 2014, the defendant was convicted in Bronx County Criminal Court of attempted criminal possession of a controlled substance in the seventh degree, a Class B Misdemeanor, in violation of New York Penal Law 220.03, and sentenced to conditional discharge and his license was suspended for six months.  Pursuant to U.S.S.G. § 4A1.1(c), this results in one criminal history point.

5.      On or about November 6, 2008, the defendant was convicted in Bronx County Supreme Court of attempted criminal sale of a controlled substance in the third degree, a Class C Felony, in violation of New York Penal Law 220.39, and sentenced to five years'

---

[2] According to the PSR, the defendant was found in possession of 25 heroin glassines bearing the stamp "Coca Cola."  (PSR ¶ 70).

probation and his license was suspended for six months.  Pursuant to U.S.S.G. § 4A1.1(c), this results in one criminal history point.

      6.      On or about April 2, 2003, the defendant was convicted in Bronx County Criminal Court of criminal possession of a controlled substance in the seventh degree, a Class A Misdemeanor, in violation of New York Penal Law 220.03, and sentenced to time served and his license was suspended for six months.  Pursuant to U.S.S.G. § 4A1.2(e)(2), this results in no criminal history points.

      7.      On or about April 6, 1987, the defendant was convicted in the Southern District of New York of conspiracy to distribute heroin, a felony, and sentenced to 60 months imprisonment followed by five years' probation.  Pursuant to U.S.S.G. § 4A1.2(e)(2), this results in no criminal history points.

      8.      On or about August 27, 1986, the defendant was convicted in Bronx County Supreme Court of criminal sale of a controlled substance in the fifth degree, a Class D Felony, in violation of New York Penal Law 220.31, and sentenced to five years' probation. Pursuant to U.S.S.G. § 4A1.2(e)(2), this results in no criminal history points.

      9.      On or about April 11, 1985, the defendant was convicted in Bronx County Criminal Court of loitering unlawful use controlled substance, a Class B Misdemeanor, in violation of New York Penal Law 240.36, and sentenced to a fine.  Pursuant to U.S.S.G. § 4A1.2(e)(2), this results in no criminal history points.

      10.      On or about October 9, 1984, the defendant was convicted in Bronx County Criminal Court of attempted criminal possession of a controlled substance in the seventh degree, a Class B Misdemeanor, in violation of New York Penal Law 220.03, and sentenced to a fine.  Pursuant to U.S.S.G. § 4A1.2(e)(2), this results in no criminal history points.

11.     On or about March 23, 1983, the defendant was convicted in Bronx County Criminal Court of unlawful possession of marijuana, a Violation, in violation of New York Penal Law 221.05, and sentenced to a fine.  Pursuant to U.S.S.G. § 4A1.2(e)(2), this results in no criminal history points.

12.     Because the defendant committed the instant offense while under a criminal justice sentence, namely, conditional discharge related to his January 2, 2014 conviction, pursuant to U.S.S.G. § 4A1.1(d), two points are added.

Because the defendant has four criminal history points, he is in Criminal History Category III.

## IV.     Potential Penalties

The defendant's conviction as to the lesser included offense of Count One exposes him to a maximum term of imprisonment of 40 years' imprisonment; a mandatory minimum term of imprisonment of five years; a maximum term of supervised release of life; a mandatory minimum term of supervised release of four years; a maximum fine, pursuant to Title 21, United States Code, Sections 841(b)(1)(B) & 846, and Title 18, United States Code, Section 3571, of the greatest of $5,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense; and a mandatory $100 special assessment.

V.      **Applicable Guidelines**

Under the terms of the plea agreement between the Government and the

defendant, the parties stipulated to the applicable Guidelines range.  The Stipulated Guidelines

Range was calculated as follows:

1.      Pursuant to U.S.S.G. § 2D1.1(a)(5) and 2D1.1(c)(7), the base offense level

for the offense charged in Count One is 26, because the defendant's offense involved at least 400

grams but less than 700 grams of heroin.

2.      Assuming the defendant clearly demonstrates acceptance of responsibility,

to the satisfaction of the Government, through his allocution and subsequent conduct prior to the

imposition of sentence, a  two-level reduction will be warranted, pursuant to U.S.S.G. §

3E1.1(a).  Furthermore, assuming the defendant has accepted responsibility as described in the

previous sentence, the Government will move at sentencing for an additional one-level reduction,

pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to

enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and

permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 23.  With

Criminal History Category III, this results in a Guidelines range of 57 to 71 months'

imprisonment, with a mandatory minimum sentence of 60 months.

## DISCUSSION

A.      **Applicable Law**

District courts must "begin all sentencing proceedings by correctly calculating the

applicable Guidelines range," which serves as "the starting point and the initial benchmark" for

sentencing.  *Gall* v. *United States*, 552 U.S. 38, 49 (2007).  After determining the applicable

Guidelines range, courts consider the seven factors set forth in Title 18, United States Code,

7

Section 3553(a).  *See id.* at 50 & n.6.  In determining the appropriate sentence, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.  18 U.S.C. § 3553(a)(2).

**B.      A Sentence Within the Guidelines Range is Appropriate**

As the Government has noted in each of the sentencing submissions for the defendants in this case, the nature and circumstances of the defendant's crime are serious.  The defendant trafficked a drug that is the center of an escalating public health crisis here in the United States.  Drug overdose is "the number one cause of injury-related death in the United States[.]"  Holly Hedegaard et al., "Drug Poisoning Deaths Involving Heroin: United States, 2000-2013," NCHS Data Brief, No. 190 (Mar. 2015) (available at: http://www.cdc.gov/nchs/data/databriefs/db190.pdf).  The drug overdose deaths attributable to heroin have nearly quadrupled between 2000 through 2013, with the most dramatic increase occurring after 2010.  *Id.* at 1; *see also* Lenny Bernstein, "The rate of heroin overdose deaths has nearly tripled in just three years," *Washington Post* (Mar. 4, 2015).  In 2014, the same year as the defendant's conduct here, then-Attorney General Eric Holder declared heroin overdose deaths an "urgent public health crisis," noting that "few substances are more lethal than prescription opiates and heroin."  Department of Justice, "Attorney General Holder, Calling Rise in Heroin Overdoses 'Urgent Public Health Crisis,' Vows Mix of Enforcement, Treatment," Press Release (Mar. 10, 2014) (available at: http://www.justice.gov/opa/pr/attorney-general-holder-calling-rise-heroin-overdoses-urgent-public-health-crisis-vows-mix).  And, just about two months before the filing of this submission, the White House announced millions of dollars in funding towards "a broad range of efforts that will reduce the trafficking, distribution, and use of heroin – a drug that has emerged as a serious threat to multiple regions of the United States."  The White House,

"White House Drug Policy Office Funds New Projects in High Intensity Drug Trafficking Areas," Press Release (Aug. 17, 2015) (available at: https://www.whitehouse.gov/the-press-office/2015/08/17/white-house-drug-policy-office-funds-new-projects-high-intensity-drug).  One such region under serious threat is our own; New York and New Jersey were selected together as one of five regional programs that will receive funding for a "Heroin Response Strategy," in order to "address the severe heroin threat facing those communities[.]"  *Id.*

The defendant, along with his co-defendant Carlos Ramos, ran a heroin trafficking business out of his apartment, selling this deadly narcotic to members of his community.  Aviles did not only house the stash of heroin for the group, but he also was intimately involved in the transactions of that heroin.  In the course of only this investigation, Aviles was involved in ten sales to an undercover officer.  Aviles and Ramos maintained the "work phone" for the group, accepting calls from potential customers and setting up heroin transactions.  Aviles was not a minor player, or low-level worker; he managed the operations and maintained the stash.

Aviles participation in this heroin conspiracy was not an anomaly.  Aviles has been involved in the trade of narcotics for much of his adult life.  The defendant has four prior convictions for narcotics trafficking, and three pending cases involving narcotics (including one with an alleged sale, and another with possession of heroin bearing the "Coca Cola" stamp, which he trafficked in the instant offense).  (*See* PSR ¶¶ 59, 60, 61, 62, 68, 69, 70).

Aviles's first drug trafficking offense occurred back in 1985, when, at the age of 25, Aviles sold cocaine to an undercover officer.  (PSR ¶ 59).  That same year, Aviles was part of a drug trafficking organization that distributed heroin in the Bronx.  (PSR ¶ 60).  Aviles was convicted in this District for his role in that organization, and received the sentence that defense

counsel and Probation recommend here – 60 months.  (*See* Def. Sent. Sub. at 1-3; PSR at 21).

But, as the instant case and his criminal history demonstrate, 60 months was insufficient to

provide specific deterrence to this defendant.  In fact, his narcotics offenses escalated after his

time in federal custody.  (*Compare* PSR ¶¶ 56-59 (four arrests prior to federal conviction) *with*

PSR ¶¶ 61-63, 68-70 (seven arrests after federal conviction, including his arrest on the instant

offense)).  His conduct in this case,[3] coupled with his criminal history, belie defense counsel's

contention that a 60 month sentence is sufficient to ensure that Aviles "will not jeopardize his

future or risk separation from his family by breaking the law again."  (Def. Sent. Sub. at 3).

        Given the seriousness of the defendant's conduct and his inability to be deterred

from engaging in the trafficking of narcotics, despite multiple run-ins with the law, the

Government believes a sentence within the Guidelines range is appropriate here.

---

[3] As noted earlier, the defendant's instant offense was committed while he was on conditional
discharge from a prior narcotics conviction.  (*See* PSR ¶¶ 63, 65).

## **<u>CONCLUSION</u>**

For the reasons set forth above, the Government respectfully submits that a

sentence within the Guidelines range of 60 to 71 months is appropriate.

Dated:          New York, New York
                October 5, 2015

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney

                            By:     _/s/_____
                                        Megan Gaffney
                                        Assistant United States Attorney
                                        (212) 637-2105

## <u>CERTIFICATE OF SERVICE</u>

   The undersigned attorney, duly admitted to represent the United States before this Court, hereby certifies that on the below date, she caused the Government's Sentencing Memorandum be served on counsel for the defendant via ECF.

Dated:   New York, New York
     October 5, 2015

           Respectfully submitted,


           ___/s/_____
           Megan Gaffney
           Assistant United States Attorney